IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

RHONDA K. W.,

                Plaintiff,

       v.                               Civil Action No.
                                       5:21-CV-1387 (GLS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF

OLINKSY LAW GROUP        DANIEL BRADY, ESQ.
250 South Clinton Street, Suite 210  HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.      NATASHA OELTJEN, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social

Security ("Commissioner") finding that she was not disabled at the relevant

times and, accordingly, is ineligible for the disability insurance ("DIB")

benefits for which she has applied.  The matter has been referred to me for

the issuance of a report and recommendation, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3.  For the reasons

set forth below, I recommend a finding that the Commissioner's

determination resulted from the application of proper legal principles and is

supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in May of 1973, and is currently forty-eight years of

age.  She was forty-nine years old on both November 3, 2016 and

December 22, 2016, the dates upon which she alleges she became

disabled and on which she filed her application for benefits, respectively.

Plaintiff measures five feet and eight inches in height, and weighed

between approximately one hundred and seventy-eight and one hundred

and eighty-eight pounds during the relevant period.  Plaintiff resided for a

portion of the relevant period in an apartment in Fulton, New York, but

reported at the time of the second administrative hearing that she is now

living in a house in Liverpool, New York with her husband and minor son.

Plaintiff reports that she attended high school through the ninth grade and later obtained her commercial driver's license ("CDL").  She worked as a bus driver for a school district for twenty-five years until sustaining the physical injuries that she claims render her disabled.

Plaintiff alleges that she suffers from injuries in her low back, right hip, and right elbow, as well as chronic muscle spasms, migraine headaches, anxiety, and depression.  As is relevant to her application for benefits, she treated for her physical impairments throughout the relevant period with Dr. Anil Aziz at Neurological Care Center, Dr. Farah Siddiqui and certified physician's assistant ("PA") Rachel Bossi at Regenerative Spine and Musculoskeletal Medicine, Dr. Mary Trusilo at New York Spine and Wellness, and various sources at Syracuse Orthopedic Specialists, Upstate Orthopedics, Family Practice Associates, Median Chiropractic, FamilyCare Medical Group, and RehabWorx Physical Medicine.  She also received treatment for her mental impairments with sources at the Mountain View Healing Center and Dr. Brian Smith.

The primary focus of plaintiff's claim that she cannot perform work-related functions is upon pain in her lower back and right hip, which resulted from work-related accidents in 2015 and 2016.   At the 2019 administrative hearing, she reported that she can clean some dishes and

pick up around the house somewhat, but her husband and son do most of the household chores, including anything involving carrying and bending. She further alleged that she has difficulty reaching forward with her arms or lifting more than five pounds, and that she has only a fair ability to stand and walk, but cannot sit for very long and needs to lay down after standing up straight for more than fifteen minutes.  Plaintiff did report attending church three days per week, but needing to stand up and walk around during the service if she has been sitting for twenty minutes.  She further reported that she refuses to take any pain medications that might be addictive.

At the second administrative hearing, held in 2021, plaintiff reported that the pain in her neck and back have worsened since the previous hearing, such that she spends a great deal of time during the day lying down and uses a cane when standing and walking.  She testified that she underwent a right hip arthroscopy near the end of 2020, but that it has not alleviated her pain.

II.   PROCEDURAL HISTORY

    A.   Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security Act on December 22, 2016.  Administrative law judge ("ALJ") Robyn L.

Hoffman held an administrative hearing on February 13, 2019, following

which she issued a decision on March 8, 2019, finding that plaintiff was not

disabled.  On August 26, 2020, the Social Security Appeals Council

("Appeals Council") reviewed that decision and ordered that the matter be

remanded, finding that further evaluation of the medical opinion evidence,

plaintiff's mental impairments, and the residual functional capacity were

required, and additionally directing that the ALJ should obtain evidence

from a vocational expert.  ALJ Hoffman held a second hearing on January

6, 2021, after which she again issued an unfavorable determination on April

22, 2021.  That opinion became a final determination of the agency on

October 28, 2021, when the Appeals Council denied plaintiff's request for

review of the decision.

B.    The ALJ's Decision

In her decision, ALJ Hoffman applied the familiar, five-step sequential

test for determining disability.  At step one, she found that plaintiff did not

engage in substantial gainful activity during the relevant period.  The ALJ

next found at step two that plaintiff suffers from severe impairments that

impose more than minimal limitations on her ability to perform basic work

functions, including lumbar spine degenerative disc disease with

radiculopathy, sacroiliac joint dysfunction, a right hip labral tear and

osteoarthritis, and pelvic floor dysfunction.  As part of her step two finding,

ALJ Hoffman also found that plaintiff's alleged migraine headaches, vision

issues, and mental impairments do not constitute severe impairments.

At step three, ALJ Hoffman examined the governing regulations of

the Commissioner setting forth presumptively disabling conditions (the

"Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

plaintiff's conditions do not meet or medically equal any of the listed

conditions set forth in those regulations, specifically considering Listings

1.15 and 1.18.

ALJ Hoffman next surveyed the available record evidence and

determined that plaintiff retains the residual functional capacity ("RFC") to

perform a range of work at the light exertional level, as defined by the

controlling regulations, with the following exceptions:

> she can occasionally lift and carry twenty pounds;
> frequently lift and carry ten pounds; sit for up to six
> hours; and stand/or walk for six hours, all in an eight-
> hour workday with normal breaks. She would need to
> be able to change positions from sitting and standing
> at will, but would remain on task at the workstation.
> She can occasionally climb ramps or stairs and
> occasionally climb ladders, ropes, or scaffolds. She
> can perform occasional balancing on uneven terrain
> but is not limited in her ability to maintain balance on
> even terrain. She can perform occasional stooping,
> kneeling, crouching, and crawling.

ALJ Hoffman went on to step four and concluded that plaintiff is

6

unable to perform her past relevant work as a bus driver.  Proceeding to step five, the ALJ elicited testimony from a vocational expert and, relying on that testimony, found that plaintiff remains able to perform available work in the national economy, citing as representative positions the jobs of marker, small products assembler, and electrical accessory assembler.  Based upon these findings, ALJ Hoffman determined that plaintiff was not disabled at the relevant times.

C.   This Action

Plaintiff commenced this action on December 30, 2021.[1]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ erred when assessing the medical opinion evidence, arguing in particular that the ALJ (1) failed reconcile the great weight purportedly afforded to the opinion from Dr. Mary Trusilo with the RFC that allows for greater performance of activities, and (2) failed to sufficiently explain her decision to afford only some weight to the opinion from physical therapist ("PT") Caryn Baker and PA Rachel Bossi.  Dkt. No. 7.

Oral argument was conducted in this matter, by telephone, on

---

[1]   This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Social Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

February 9, 2023, at which time decision was reserved.

III.    DISCUSSION

    A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so,

then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F.

Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d

582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, at step five the agency

must examine whether the claimant can do any other work. *Id.* §§

404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work. *Perez*, 77 F.3d at 46. In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills. *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

Plaintiff's challenge to the Commissioner's determination centers on

the ALJ's evaluation of certain medical opinions in the record, and

specifically opinions rendered by Dr. Mary Trusilo, who plaintiff identifies as a treating physician, and a joint opinion from PT Caryn Baker and PA Rachel Bossi.  Because plaintiff's application was filed prior to March 17, 2017, the prior regulations governing the evaluation of opinion evidence, which have since been amended, apply to her claim.  Under those regulations, the ALJ was required to consider whether the treating physician's opinion was entitled to controlling weight, which must be afforded "so long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with (or contradicted by) other substantial evidence in the claimant's case record. *Schillo v. Kijakazi*, 31 F.4th 64, 75 (2d Cir. 2022).  If it is not entitled to controlling weight, the ALJ must then determine what degree of weight it is otherwise entitled to by considering factors such as (1) the frequency, length, nature, and extent of treatment, (2) the amount of medical evidence supporting the opinion, (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist. *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019).  In making these findings, the ALJ is required to provide "good reasons" for the weight afforded to the treating physicians' opinions, defined by the Second Circuit as "reasons supported by substantial evidence in the record.  *Schillo*, 31

F.4[th] at 75 (citing *Estrella*, 925 F.3d at 96).  Moreover, when considering

the weight to which the treating physician's opinion is entitled at the second

step of this analysis, the ALJ is required to explicitly apply the above factors

in his or her analysis; failure to do so is procedural error.  *Schillo*, 31 F.4[th]

at 75.  However, such error may be held harmless "if the ALJ has otherwise

provided 'good reasons' for its weight assignment" or the court is assured

that "'the substance of the treating physician rule was not traversed.'"

*Schillo*, 31 F.4[th] at 75 (quoting *Estrella*, 925 F.3d at 96).

### 1.    Opinion of Dr. Mary Trusilo

Plaintiff argues that the ALJ failed to comply with the proper standard

when declining to adopt all the limitations from Dr. Trusilo's medical source

statement by (1) failing to explain why she concluded it was inconsistent

with the "overall record," (2) providing merely boilerplate and conclusory

explanations for declining to incorporate portions of her opinion in a way

that precludes meaningful review, (3) relying on a selective review of the

evidence while ignoring evidence of greater limitations, and (4) appearing

to assess whether Dr. Trusilo's opinion was consistent with her

predetermined RFC findings rather than appropriately formulating plaintiff's

RFC based on the medical evidence.  Dkt. No. 7, at 23-24.

In a treatment record dated December 8, 2020, Dr. Trusilo opined that plaintiff "should not stand or ambulate for prolonged periods of time without the frequent ability to stand or sit if working." AT 2211. She further recommended that plaintiff engage in only occasional pushing, pulling, and lifting of less than five pounds, and that she is able to perform "only sedentary work." *Id.* She indicated that, "otherwise, I would defer to the previous functional capacity evaluation for more detail in her functional capabilities." AT 2211.

The ALJ found that Dr. Trusilo's opinion "is generally entitled to great weight," noting that it "is from a treating source familiar with the claimant's progress," and specifically indicating that it was incorporated into the RFC finding to the extent it is consistent with the overall record, specifically in that it supports a limitation allowing the claimant to "readily change positions." AT 28. The ALJ found, however, that the "sum of the evidence illustrates that the claimant has slightly greater abilities with regard to lifting such that she can perform a range of light work with occasional lifting up to twenty pounds and frequent lifting up to ten pounds." AT 28.

To the extent that plaintiff argues that the ALJ failed to adopt much of Dr. Trusilo's opinion, I find that argument to be misleading regarding the content of that opinion. Notably, the only abilities on which Dr. Trusilo

specifically opined are the abilities to stand, walk, sit in the context of

avoiding doing any of those actions for "prolonged periods," and the

abilities to lift, push, and pull.  AT 2211.  The ALJ explained that she

accommodated the first set of these limitations into the RFC finding by

allowing for an ability to change positions from sitting and standing at will,

and further provided an explicit indication that she found the assessment

regarding lifting, pushing, and pulling to be inconsistent with the record

evidence.  AT 28.  The only other portions of Dr. Trusilo's opinion consist of

(1) a vague assessment that plaintiff is capable of only "sedentary" work,

and (2) a statement that she "would defer" to the previous functional

assessment.  *Id.*  However, there is no indication in Dr. Trusilo's opinion as

to which definition of "sedentary" she was alluding, and certainly no

indication that she intended to apply the specific technical meaning of that

word as used in the Social Security context.  The ALJ was therefore not

required to interpret the reference to sedentary work as being indicative of

a certain specific set of exertional abilities.  Although it certainly would have

been desirable for the ALJ to explain how she addressed the "sedentary"

statement, her failure to do so here does not preclude meaningful review

and is not error.[2]  *See Alexander v. Comm'r of Soc. Sec.*, 19-CV-0762,

2020 WL 5642184, at *15 (W.D.N.Y. Sept. 22, 2020) (in the case of a

physician opining that the plaintiff could perform "a sit-down job," finding

that the ALJ was not required to interpret such statement as an opinion that

the plaintiff is able to meet only the "highly specific definition of sedentary

work" and doubting that the remark "represents a reasoned consideration

of the SSA's various exertional levels").  Moreover, the fact that Dr. Trusilo

deferred to the other functional capacity assessment does not mean that

she adopted or affirmed the limitations in that opinion; without any more

specific indication, such an interpretation stretches the meaning of the word

"defer."[3]  Plaintiff's contention that the ALJ rejected most of Dr. Trusilo's

opinion is therefore not accurate, as the only specific functional limitations

from that opinion that were not incorporated into the RFC were related to

---

[2]     I note that, when addressing the opinion of independent medical examiner Dr. Gregory Chiaramonte, who opined that plaintiff has the ability to return to "light work" with restrictions, the ALJ did indicate that "the assessment that the claimant can perform 'light work' is not defined with regard to the claimant's specific functional abilities and limitations."  AT 29-30.  This statement, made in a similar context related to a different opinion, provides insight into the ALJ's implicit reasoning regarding Dr. Trusilo's opinion regarding "sedentary" work.

[3]     Most relevantly, "defer" is defined as "to delegate to another," but also "to delay." *Defer*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/defer. Neither of these definitions supports any argument that Dr. Trusilo intended to agree with or adopt the limitations in the physical therapist's functional capacity evaluation.

pushing, pulling, and lifting, and the ALJ explained why she did not adopt those.

As to the limitation on lifting, pushing and pulling, plaintiff argues that the ALJ failed to provide specific reasons based on an appropriately broad assessment of the evidence for concluding that such limitation is inconsistent with the sum of the overall evidence. While it is true that the ALJ's explanation within the paragraph discussing Dr. Trusilo's opinion is lacking much supportive detail regarding the content of the evidence in the record, that paragraph cannot be read in isolation. The ALJ engaged in a fairly comprehensive summation of the medical evidence, spanning approximately five pages of her decision. AT 23-27. Although this summation undeniably does not discuss every piece of evidence or examination note present in the record – such a task would be quite onerous given the size of the record in this case – the failure of an ALJ to discuss specific evidence does not stand as proof that the ALJ failed to consider that evidence. *See Brault*, 683 F.3d at 449 (noting that, "an ALJ is not required to discuss every piece of evidence submitted" and his or her "failure to cite specific evidence does not indicate that such evidence was not considered"). Because the ALJ's recitation appears to provide a fair representation of the types of findings that were noted throughout the

17

record and does not seemingly ignore pertinent positive findings, I cannot agree with plaintiff's argument that the ALJ failed to appropriately assess all of the record evidence.  Further, this summation of the evidence provides context regarding what evidence the ALJ was relying upon when stating that she found Dr. Trusilo's weight restriction to be inconsistent with the evidence, and it contradicts plaintiff's argument that the ALJ's finding was merely conclusory or unexplained.

I note also that, although the ALJ appears to have considered Dr. Trusilo to be a treating source, it is not clear from the record that she actually treated plaintiff on any occasion other than the date on which she provided her medical source statement.  Notably, the other treatment records from New York Spine and Wellness are signed by other providers. It is therefore questionable whether Dr. Trusilo's opinion is entitled to the special deference that would be warranted by the treating physician rule. Nonetheless, regardless of whether Dr. Trusilo is properly considered to be a treating physician, the ALJ's discussion of the evidence and discussion of the other opinion evidence related to the abilities to lift, carry, push, and pull indicate that the ALJ's rejection of a limitation to lifting only less than five pounds is supported by substantial evidence.

For all of the above reasons, I recommend a finding that the ALJ's assessment of Dr. Trusilo's opinion is consistent with the applicable legal standards and supported by substantial evidence.

### 2.    Opinion of PT Baker and PA Bossi

Plaintiff's primary argument in support of her challenge to the Commissioner's determination is the claim that the ALJ erred when weighing the functional capacity assessment completed by PT Caryn Baker that was later signed also by PA Rachel Bossi.  AT 934, 2212-15.  When completing the functional capacity assessment form on August 28, 2017, PT Baker opined that plaintiff can lift and carry ten pounds occasionally and less than ten pounds frequently, can stand or walk less than two hours in an eight-hour workday, must periodically alternate positions between sitting and standing, and is limited in her ability to push with her lower extremities.  AT 2212-13.  PT Baker further opined that plaintiff can never balance, kneel, crouch, crawl, or stoop, occasionally climb ramps and stairs and reach, and is limited in her ability to be exposed to temperature extremes, vibration, humidity, wetness, and hazards.  AT 2213-15.  In support of her opined limitations, PT Baker cited to increased pain in plaintiff's low back, right hip, and right lower extremity with these movements, the objective imaging of her joints, and her history of treatment with injections, physical

therapy, and chiropractic massage.  *Id.*  PT Baker further opined that plaintiff's pain and prescribed medications – when she takes medication – affect her ability to maintain attention and concentration to an unspecified degree.  AT 2214.  PA Bossi co-signed this completed residual functional capacity form on October 25, 2017.  AT 1938.

The ALJ found that this opinion should be given only some weight because, although it was rendered after an examination and PA Bossi had a treating relationship with the plaintiff, the restrictions regarding the extent of reaching, postural, and environmental limitations in particular, were deemed to be inconsistent with the overall medical record and with plaintiff's own reported daily activities.  AT 28-29.  The ALJ did state, however, that she accepted and incorporated a need to alternate between sitting and standing as indicated in this opinion.  *Id.*

Addressing first plaintiff's argument to the effect that the ALJ's finding that the relevant opined limitations were inconsistent with the evidence in the record was based on a selective view of the medical evidence and is merely a conclusory statement, that argument is rejected for the same reasons that were already discussed above related to Dr. Trusilo's opinion. Although the ALJ did not discuss which particular evidence supported her finding within the paragraph related to weighing this opinion, she did

engage in a detailed summation of the evidence earlier in her decision that does not appear to disregard pertinent evidence that is favorable to plaintiff in a way which would suggest a partisan or improper review of the record. I further find that that discussion of the evidence, along with her analysis of the other opinions in the record, attest to the fact that the ALJ's rejection of the extent of limitations related to the specifically enumerated reaching, postural and environmental limitations is supported by substantial evidence.

I note, moreover, that it is inescapable that the sources who rendered this functional capacity assessment – a physical therapist and a physician's assistant – do not qualify as "acceptable medical sources" under the regulations that are applicable to plaintiff's claim. Because they are not acceptable medical sources, the regulations do not require the same stringent application of the so-called *Burgess* factors[4] that is required when weighing an opinion from an acceptable medical source. 20 C.F.R. § 404.1527(a)(1) (outlining the requirements to consider when assessing medical opinions and defining "medical opinions" specifically as "statements from acceptable medical sources"). The applicable regulation specifically provides that, although opinions from sources who are not

---

[4]    *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).

acceptable medical sources should still be considered using the relevant enumerated factors applicable to the opinions of an acceptable medical source as guides, not every factor will be relevant and the ALJ need not articulate how he or she considered those factors; rather, all the ALJ must do is "explain the weight" given to such opinions "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." 20 C.F.R. § 404.1527(f)(1)-(2). As such, plaintiff's argument that remand is required because the ALJ did not specifically address the factor of supportability is not consistent with the applicable legal standard.

I acknowledge that the ALJ did not specifically state that she intended to include the opined limitations for lifting, carrying, and standing/walking in her rationale regarding inconsistency with the evidence in the record. In finding that the opinion was not entitled to more than some weight, the ALJ stated that "some of the more extreme limitations" are not consistent with the record, noting that "[t]his includes limitations for reaching, postural limitations, and environmental exposure limitations." AT 28. While, once again, I note that greater clarity in the ALJ's findings would have been preferable, I find that the decision does not preclude meaningful review because, particularly in light of the less stringent articulation requirement

applicable to this opinion, the ALJ's decision provides a discussion of the evidence that permits a reviewer to discern the ALJ's reasoning.  As was already discussed, the ALJ included a significant summation of the representative medical evidence that provides an indication of how she interpreted the evidence when considering plaintiff's residual functional capacity.  Further, the ALJ's discussion of the other opinion evidence also provides elucidation into her reasoning for not adopting the relevant limitations from the opinion of PT Baker and PA Bossi.  For example, the ALJ found that the opinion of consultative examiner Dr. Elke Lorensen was entitled to some weight, specifically indicating that she accounted for this opinion in the RFC related to the ability to lift, perform occasional postural limitations, and as to "overall ability to sit, stand and/or walk," with an additional ability to change positions as needed.  AT 28.  Dr. Lorensen notably opined that, as is relevant to the current discussion, plaintiff has no gross limitations in her ability to sit, stand, and walk, and mild-to-moderate limitation in her ability to lift, all of which is generally consistent with the ALJ's RFC finding of light work.  AT 830; *see Colon-Sanchez v. Comm'r of Soc. Sec.*, 14-CV-0705, 2016 WL 638816, at *7 (N.D.N.Y. Jan. 25, 2016) (Peebles, M.J.) (finding RFC determination for light work was consistent with opinion that plaintiff had no limitations in standing, walking, or sitting,

and mild-to-moderate limitations in lifting, carrying, pushing, and pulling). In affording some weight to the opinion from independent medical examiner Dr. James McGlowan, the ALJ found his limitation for lifting fifteen-to-twenty pounds to be generally consistent with the evidence.  AT 29.  Given that the ALJ found those assessments and levels of limitation to be consistent with the evidence, it is not an undue leap of logic to determine that the ALJ found the greater restrictions opined by PT Baker and PA Bossi about which she was silent to be inconsistent with the evidence along with the other limitations she specifically enumerated.  The context of the ALJ's decision as a whole therefore provides sufficient information from which this reviewing court can determine and assess the reasons why the ALJ declined to adopt these other portions of the opinion from PT Baker and PA Bossi.

Because the ALJ has provided a sufficient basis to show that her determination regarding these opinions is supported by substantial evidence, I recommend a finding that the ALJ did not commit any error meriting remand.

IV.   SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I

recommend a finding that the determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 11) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 7) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    February 14, 2023
          Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge